EVA M. BRAGG *vs.* MURDOCK M. HATFIELD.

Penobscot.    Opinion August 28, 1925.

*A married woman cannot lawfully  be arrested on mesne process by virtue of the*
*immunity and exemption accorded her under Sec. 4, Chap. 66, R. S., and such*
*exemption from arrest does not have to be claimed.*
*Once a married woman is arrested for tort or contract, equitable estoppel aside,*
*right of action for interfering with her liberty is accrued.   Such right of action, in*
*contradistinction to the exempted right, may be relinquished voluntarily.*

In the instant case there was no relinquishment of right of action by this married-
woman plaintiff.   The verdict in favor of her, whom this defendant caused to
be arrested on mesne process in an earlier civil action, is supported by evidence,
credible, reasonable, and consistent, and is lawful.

On exceptions and motion.   An action to recover damages for
having been arrested on mesne process brought by plaintiff, a married
woman, against defendant for having caused her arrest and detention
in a civil action brought by defendant against the plaintiff and her
husband, alleging exemption from arrest on mesne process under
Sec. 4, Chap. 66 of the R. S.   Counsel for defendant entered several
exceptions to various rulings by the presiding Justice, and after a
verdict of $1,089.05 in favor of the plaintiff was returned by the
jury, filed a general motion for a new trial.   Exceptions overruled.
Motion overruled.

The case fully appears in the opinion.

*P. A. Smith*, for plaintiff.

*Wilfred I. Butterfield and Austin W. Snare*, for defendant.

SITTING:  CORNISH, C. J., PHILBROOK, DUNN, MORRILL, DEASY,
STURGIS, BARNES, JJ.

PHILBROOK, BASSETT, JJ., concurring in the result.

DUNN, J.   On exceptions and general motion.

Action by married woman for unlawful arrest and detention.

This married-woman plaintiff was arrested on mesne process for
deceit in selling certain real estate.   The defendant procured that

process, knowing that she against whom his writ was brought, and not otherwise served than by the making of the arrest, was married. He sued the woman's husband in the same writ, but without mention of their coverture.

The woman did not object her marriage. She was taken by the sheriff from her Stetson home to Bangor, twenty miles away, where bail was given and her release from custody had.

Counsel appeared generally in defense, at the return term of the writ in the Penobscot Superior Court, and pleaded the general issue. The case stood continued until the third term. Then it was moved that the action be dismissed as to the woman defendant, for no sufficient service of the writ. The motion was overruled; the case went to trial on the merits; verdict and judgment were adverse to the defense. The instant action was commenced some twelve weeks after the arrest. It was then, the plaintiff says in uncontradiction, she for the first time learned that the taking of her prisoner was violative of her rights. Whether any of the exceptions that were reserved and allowed shall be sustained, or the verdict which the plaintiff has shall be overturned on the motion, are the questions raised.

A wife is liable for her torts and contracts, and may be sued and her property attached and taken, as though she were sole, "but she cannot be arrested." Thus in substance is it written in the statute book. R. S., Chap. 66, Sec. 4.

Colloquial freedom rather than formal accuracy is manifest in saying that a married woman cannot be arrested. The action in hand shows only too obviously that she may be. But "cannot" as put to use is practically equivalent to "shall not." It is as a word not native to the soil, which the Legislature has naturalized by adopting. "Cannot," taken from everyday speech and touched in the context by the wand of legislative fiat, means that the arrest of a married woman, on mesne process, may not be caused with impunity. Chronology and original phraseology not infrequently are recourse for clarity. Without reference to these a statute may be dark and confused in the thick mists of black letters. In 1866, Chapter 52, in then dealing further with the contractual rights and liabilities of married women, it was provided, among other things, in these words: "But she shall not be liable to arrest on any writ in such suit." The statutes were revised in 1871. At this time the

before-quoted words were altered to read, "but she cannot be arrested." R. S. 1871; Chap. 61, Sec. 4. And, in 1883, Public Laws, Chapter 207, the same manner of expression was retained and made to apply in actions of contract and tort, indifferently. It was the mode of speech, the diction, not the meaning, that the revisal changed. The meaning remains the same: she shall not be liable to arrest; the natural energy of legislative intent is in the statute still, expressed to the ordinary mind with clearness.

The exemption is from arrest rather than from suit. It is for the benefit of women, and it is for the benefit of organized society, on the concept and persuasion that, in the spirit or genius of our civilization, the protection of wives and mothers from harassment from arrest is essential to maintaining the home, the beginning and the end of all government, in integrity.

An arrest of a person entitled to a common-law privilege of an exemption from an arrest ordinarily does not form the ground of an action for damages. *Smith* v. *Jones,* 76 Maine, 138. Parties, witnesses, jurors, and other officers of the court are exempt from civil arrest while attending in court, and for a reasonable time to go to and return from the same. Such right is not absolute in the individual. It is a policy of the law established for the facilitation of the public business. *Smith* v. *Jones,* supra. Whatever the situation might be were a court itself contemned by the arrest of a party, witness, or juror, the individual in his own affairs is without privilege until privileged by the court. As a personal thing, this privilege to be privileged is conditional and quiescent till, for the furtherance of justice, for the good more of others than of the witness, the juror, or of the other, it is determined that he be set apart temporarily from liability to arrest, or delivered from an arrest already made. And if he is, it is from the time that he is, that the privilege of being exempted or discharged, is his. He then is judicially panoplied for the period of the indulgence from being arrested, and thereupon any antecedently-made arrest becomes voidable. Hence, the arrest beforehand is valid until it is avoided.

In virtue of constitutional provision in this State, members of the Legislature are privileged from arrest, except for treason, felony, or breach of the peace, during attendance at, going to, or returning from each session. This privilege may be said to be two-phased. The one, in creation from what the public interest requires from

legislators of their time and care; secondly, merely personal, where a legislator, seeking a summary way for his own relief, sets it up.

Any personal privilege may be waived. The waiver may be express or it may be by implication. *Chase* v. *Fish*, 16 Maine, 132; *Smith* v. *Jones*, supra. Waiver is by implication when the benefit is not applied for seasonably and properly. *Chase* v. *Fish*, supra. And as the privilege of being made privileged may be waived, and there may be waiver of a privilege actually conferred, so equitable estoppel will preclude the averring to the contrary, where one has acted at variance with honesty and fair dealing, and it would be inconsistent with equity and good conscience for him to allege and prove that which might have perhaps otherwise existed.

The non-arrest statute in the instance of a married woman comes home to the point that her exemption is not conditional upon being claimed. Unlimited asylum for woman tortfeasors, nor a place that for them shall afford an inviolable refuge from contracts, has not been prescribed by the Legislature. Estoppel in pais operates alike whether against the conduct of woman or of man. *Kalloch* v. *Elward*, 118 Maine, 346. And a woman arrested on an original writ for tort or contract, may waive the right of action which the violation of her exemption completes. The statute is a legislative ''Thou shalt not.'' Therein lies controlling distinction. A witness may be exempted; the arresting of a married woman is forbidden. Once she is arrested equitable estoppel aside, right of action for interfering with her liberty is accrued. But, as has been noticed, such right of action may be relinquished voluntarily.

The case of *Weston* v. *Palmer*, 51 Maine, 73, cited by the defendant is not ruling here. Decision there antedates the statute. Besides, the wife and husband in that case were not permitted, on writ of error, to reverse the judgment for an error of fact which might have been availed of in the first suit. In *Winchester* v. *Everett*, 80 Maine, 535, the woman was described in the original writ as single. The writ was personally served. The defendant appeared. Eventually judgment was suffered on default, it never having been suggested that she was other than as in the writ was said. Subsequently the judgment debtor was arrested on execution. Then she advanced her marriage. It was held that, the judgment on which the execution issued being valid, an action for the arrest would not lie. Of course, simply by way of mentioning the distinction between an arrest made

by an officer and one caused by a party, an officer, who acts according to his precept in making an arrest, is not a trespasser, although the person arrested is privileged from arrest. *Chase* v. *Fish,* supra.

No words expressly confer the right to sue for violating the immunity. But through the maze of the array of cases from this and other jurisdictions with which the brief of counsel for this defendant has fairly bristled, there runs the thread of recognition of the legal consequence, that if there was wrong, there is remedy. Concerning the status of married women, in reference to immunity from arrest, the intention of the Legislature is clear. If such intention were not to be given effect, for woman's own indemnity where immunity was defied, the action would be in mockery of the purpose of the statute. It could be justified only because of some positive prohibitory rule. And there is none.

To return more immediately to the situation. Exceptions are eight in number. Were a married woman, arrested on mesne process, to be in a legal condition like that of an arrested witness, as the exceptions contemplate that she would, some of the exceptions might not be shaken. But the difference between the state of the woman and the witness has been noticed. Of the exceptions let it suffice to say particularly, that according to the weight of authority the giving of a bond, by a person privileged from arrest, does not ordinarily constitute a waiver. *Baker* v. *Copeland,* 140 Mass., 342; *Washburn* v. *Phelps,* 24 Vt., 506. It may be a link in the chain of waiver. *Kalloch* v. *Elward,* supra. But it is not open to say, as matter of law, that it is conclusive. Nor yet that the tendering of bond and appearing generally and pleading the general issue are unanswerable. *Kalloch* v. *Elward,* supra. Here, the question of waiver was submitted to the jury, to be sure, as though the rights of married women and witnesses were cognates, but, read as a whole, the charge sent waiver as a subject of investigation to the jury fully as favorably to the defendant as he reasonably could have expected.

Upon the issue raised by the motion for a new trial, the defendant does not urge that the instructions given were, as legal propositions, erroneous and that such error prejudiced his cause, or that the jury misunderstood or misapplied the law given to it. The law of the case has been pressed upon attention by the defendant in his exceptions. So, on the motion there is presented, that the verdict is palpably wrong, or, at the least, that there is excessiveness in the amount of the damages.

"The burden which the proponent of a motion to overturn a verdict assumes has been too long and too often declared to require citation.—The court must proceed upon the theory that the jury had a right to accept all the testimony of the plaintiff's side as true, and to reject all the testimony of the defendant's side as untrue, mistaken, or unsatisfactory, unless the testimony, including the circumstances and probabilities, reveals a situation that proves the testimony on the plaintiff's side to be inherently wrong." *Daughraty* v. *Tebbetts*, 122 Maine, 397.

The verdict in the instant case is supported by evidence, credible, reasonable, and consistent, and is commendable and lawful.

Mitigating circumstances and hardships inflicted and injustice done usually find reflection in damages. This plaintiff has an award of $1,089.05. On the question of damages, elements additional to the usual ones of inconvenience, humiliation, disgrace, and worry are indicated lucidly. One single day comprised the time that the plaintiff was kept from her home and her four young children. But there was testimony, the weight and force and measure of which was for the jury, that the plaintiff suffered the mental agony of nervous collapse, and that the arrest contributed to the premature birth which occurred. These were not less excruciating than some other results. Again, the defendant knew that he was suing and arresting a married woman. He deliberately violated the law. In his reckless course he sought, unsuccessfully, to justify before the jury. Evidence to support the award is not lacking.

*Exceptions overruled.*
*Motion overruled.*

CORNISH, C. J., sat at argument and participated in consultation, but owing to retirement, did not join in the opinion.

BASSETT, J., was appointed subsequent to argument but prior to appearance of opinion, hence was not one of the sitting Justices but joins in the opinion by concurring in the result.